Good morning, ladies and gentlemen. Before we get started this morning, I am told that we are reverting to old technology in terms of keeping time because the lights are not working, so I suggest that you use your peripheral vision and I will remind you if you are too far out of line there. So, our first case for this morning is United States v. Patrick. Mr. Donovan. Thank you, your honor. May it please the court and opposing counsel. I'm attorney Chris Dondre. I represent Mr. Patrick on this appeal. The police use of stingray in this case, a device of unknown capability and intrusiveness, should alone cause this court great concern, but the deception of the police towards all parties, especially the courts, is even more troubling. The non-disclosure agreement signed by the FBI and the Milwaukee Police Department months before Mr. Patrick's arrest provides that no information on stingray be given, and I quote, during pretrial matters, in search warrants and related affidavits, in discovery, in response to court-ordered disclosure, in other affidavits, and on appeal. Okay, so let me ask you, Mr. Donovan, what would you do about all of this? I mean, this comes up in the government's brief on appeal. I mean, obviously the amicus speculated, but the government confirms in the brief on appeal, and as I sit here, this is also my question of the United States, it's unclear to me, you know, what questions need to be explored, what sort of process needs to go on. So I'm wondering whether this case just has to be remanded to the district court so that both sides can explore what the implications of this would be. I certainly think a remand would be appropriate to explore the stingray issue if the court decides the case on that ground. If the court decides the case on the larger ground that the original briefing, my opening brief discussed, which is whether or not the order in question even has adequate probable cause to allow tracking of a cell phone, then it might not need to order a remand. But if the court is troubled by a stingray, which it should be, and troubled by this late disclosure, then remand would absolutely be appropriate. And I lay out several grounds in my reply brief. I don't want to necessarily reiterate them now, but I kind of preview five or six different, I think, areas that do need to be explored if stingray is a concern to this court. But I take it, and again, this is really all outside the record that's been developed so far, that the warrant itself that was issued contemplated obtaining this information through the cell phone provider, Sprint. But that's not how it was done, and I think one question is, does that make any difference? Maybe it's all okay if it was possible to get it legitimately. Maybe not. Maybe that's like a general warrant, and even though you could have gotten a warrant for house number one on the block, if you just got a general warrant for all ten houses, you wouldn't say that's no good. So I'm not sure how we avoid it, but you can tell me if you think there's a way. That's a very large concern here, and the only way to figure that out would be a remand. To what extent do you think a warrant specifies methods of collection as opposed to what it is one is looking for and where one is best to find it? Well, I do think that when we're talking about technology like Stingray that's not generally available to the public, the manner does matter, and the way that they try to collect this data does matter. I think that the main authority for that is Kylo with the thermal imaging device that was used in Kylo. So I know the government, and this is in the record below regarding the indicative ruling motion that I filed in their response, they try to make the argument, well, this is just the manner in which the warrant was executed and it doesn't really matter how we found them. But when it comes to technology, I think the Supreme Court has spoken pretty clearly, it does matter how they find them. What case do you rely on for the proposition that when there is a warrant, there's a separate interest in how the warrant is executed? I don't know that I have a case that says that. There are plenty of cases that say what the prosecutor says, which is that once the warrant is issued, that covers the defendant's interest in privacy and security. And then the method is up to the person executing the warrant. There are plenty of cases that say that. You need to show that they're all wrong, and you're not citing any case that says that they're all wrong. Well, again, I think this goes back to the issue I raised originally in my opening brief, which is that I don't believe this was a warrant supported by sufficient probable cause. This was a state court order. The client was wanted on arrest warrant. Why isn't there, why isn't that enough probable cause to say we're trying to track down where he is? Because it's not probable cause to believe that he was connected or somehow involved in a criminal activity or a crime. Why does that matter? Because the Supreme Court, in all the... He was a fugitive from justice. He's wanted on arrest warrant. He doesn't have to be engaged in any crime other than, well, he's wanted. What does one need? I think one needs probable cause to believe he's involved in a crime under the Supreme Court cases that the government relies upon. But the government says that would be a very narrow thing. He has the truth. The state court judge talks about the violation of probation as if it's an independent crime. Underneath the violation of probation is the original crime for which he was, in fact, serving time, which he was on probation. And so I think the government's argument is that's all the crime you need. You're not supposed to be able to just violate probation and go on the lam from the arrest warrant for that. So my response to that would be not all warrants are created equal. Some are supported by probable cause signed by a neutral and attached magistrate, either a search warrant or an arrest warrant, to believe that there is some connection to criminal activity. Other warrants, like the one here, and I had to go back and look because I didn't include this in my appendix, but the warrant is in the record at 17-2 below. And this warrant is more of a status warrant. It's probably entered by the probation agent. It's in a computer system. It's not sanctioned by a judge. So we've got somebody who's wanted on a valid warrant. If you wanted to go somebody, you should have contested that. Has any court ever held that more than being wanted on a valid warrant is needed to get information about the wanted person's location? The district court in Maryland cited in my opening brief, and I can get the citation if you want, I believe, held that exact thing. That's it? The district court in Maryland? There's few and far cases. What happened on appeal? I don't believe it was appealed, and I believe Mr. Judish could give you more details on this. I believe he was involved in that case. But I don't think it went up on appeal. There are few and far cases about how- I just don't get it. I mean, Jones robs the bank. Suppose it's conceded that Jones has robbed the bank. Judges will warrant for Jones's arrest. He's on the lam. Your position is that the police are not entitled to information to alert his location. No, I think in that case it would be because first, it would be an arrest warrant presumably issued by a judge. How is your client has to have a valid arrest warrant issued? He's a fugitive. He's on the lam. I see that I'm entering my rebuttal time. Yeah, I don't have authority directly on point for that. But I believe that the cases the government relies upon also don't hold that they can do what they did here. And that all of them, from Hayden to Stegall to Carroll to Payton, all the way down the line, require some connection to criminal activity. And whether we like it or not, here, being a fugitive from the Wisconsin Department of Corrections is not a separate crime. I'm going to reflect further on that answer to the government's argument, and I'll give it to Mr. Judish. May it please the court, I'm Nathan Judish on behalf of the United States. Regarding the use of the cell site simulator, I want to make two points, one procedural and one substantive. Regarding the procedures, we believe that this argument is waived. It can't be waived. You completely concealed it in proceedings before the state judge. And you did conceal it up until your reply brief. So I can't imagine, unless you think people should just, in every single case, say, oh, and by the way, just in case the government uses the sim rate, you know, we're objecting to it. That's silly. Your Honor, any time the government executes a warrant, a defendant can explore whether the warrant was executed reasonably. No. I mean, the issue presented in this case, and I don't have an answer for it, I'm just saying the issue presented, is if the government gets a warrant and tells the magistrate or the state court judge, whoever the issuing officer is, one thing, and it conceals, then is that warrant just sort of a do whatever you want to do warrant? You know, if you went out and got a warrant to search my next door neighbor's house, can you come search my house? Because, oh, you got a warrant and you just realized that it's actually my house. If you get a warrant that says you're going to use a heat locator device, does that mean you can come use a sim rate instead? You've made a representation to the issuing judge who might have some questions, because the problem with these sim rates is that they aren't arguably focused on just, you know, Mr. Patrick's phone. They're every phone in the area, and that would be like saying, well, we can go get a general warrant, and that authorizes us to search any house in the neighborhood we want to, so we've decided to search yours. Your Honor, on a substance, I think the key point is that the warrant here authorized the officers to determine the physical location of Mr. Patrick's phone. I understand that that's your argument, but what I am interested in thinking about is the fact that this order says that you're going to do that through the cell phone provider. There's all sorts of talk about Sprint. Sprint is required to lend all reasonable assistance, blah, blah, blah. Sprint, Sprint, Sprint, and then you come and say, well, actually, we've decided, you know, to look at every cell communication from every person in this area. Your Honor, in the typical case, the government will often rely on information from both the provider and a cell site simulator. That's not in the record, and you didn't say that. You didn't tell the issue judge that you were going to use the simulator. There's a huge lack of candor on the government's part that's very troubling. Your Honor, I would note, I guess, three things on the disclosure here. First, when the officers, when there was a hearing in February 2014, the officers were able to testify that they found Mr. Patrick through cell phone tracking, and there were no follow-up questions regarding that. Yeah, because they get cut off by the court. What's happening is, you know, question, you testify you received this information through electronic information. What does that mean? Answer, electronic information tracking, cell phone, question, you get other updates, and then the court cuts off Mr. Covey and says you're going too far. He's saying he wanted to ask some more questions. He's cut off by the magistrate or judge. So I don't know that this can be put on defense counsel. I'd point to two other items in the record related to this, Your Honor, from docket entries 41 and 43 before the district court. In docket entry 41, defense counsel asked for a hearing which would address how the tracking was done and in docket entry 43, it was a status conference. Defense counsel said that that was unnecessary to provide the government which stipulates the fact that it located Mr. Patrick through tracking his cell phone. But they thought, I mean, it's the lie that bothers me here. They thought that this was a conventional warrant because they read the warrant that allowed the government to use Sprint's facilities. Everybody understands that the cell phone provider has the necessary information at its disposal to locate one of its subscribers' cell phones. What they are not told is that this extremely intrusive device, if you'd like to think high level, instead of beaming the heat sensor at just the one house, it's been beamed at the whole neighborhood. The government just sort of shot through to see who was using too much electricity. Your Honor, I strongly disagree with the characterization of these devices as extraordinarily intrusive. I mean, these are, you know, we share a cell phone network. We share the radio waves that we all communicate upon. If this is intrusive and impermissible, there would just be no way to locate people. I mean, it's the way the network functions. No, you can do it. First of all, you can do it through the provider. Secondly, I don't know, on the basis of this record, whether it's possible using this cell simulator to focus it on one number or whether it just requires the pins from the others. I don't have much other information harvested, even though, technologically, they are, in fact, capable of harvesting more information from the phone. There's a lot that we don't know, and these are questions that are quite pertinent to whether the government has appropriately limited its search. It reminds me of Title III minimization. I guess it's not in the record. I mean, the device's function is directional antennas which lock in on a target device and point in its direction. Yeah, it's not in the record, and if that's what you did, then maybe that's fine. I'm not making any decision about whether what you did is okay or not. I'm just saying this case is a completely different case than the one the government, very carefully by not talking and by giving the issuing judge an application, making the judge think she was authorized as a Sprint to be contacted, and then doing something completely different. I mean, the reason the order is that is that Sprint won't do anything that it's not explicitly directed to do, and so what the government has to do in these cases is get by with it. The problem isn't what you're asking Sprint to do. That's a different issue. We are calling this briefed act. I don't know if you're considering merits of that issue, but it's saying, you know, we got a warrant for a specific thing, and instead we've decided to use a drag net. That's my problem. The language in the warrant says that the court hereby authorizes the identification of the physical location of the target cellular phone. That doesn't specify how it's going to be done or anything like that. That's an authorization for officers to do something. I understand that, but in context, this warrant, I think the judge is misled. I'll just put it that way. Your Honor, I don't believe we made any misrepresentations. I would point the court to one cell site simulated district court case out of Arizona, Rig Maiden, it's 2013, Westlaw, 1932800. And, you know, one of the things that the court does, looks to the principles of Dahlia to say that the discretion of how to execute is left to the government. So you think the government, if it gets a warrant, could in fact simply use a drag net because you've been authorized to search one house, so why not go to all the houses? You've been authorized to search one phone, so why not look at everybody's phone? You've been authorized to do one thing. There's absolutely no constraint, once you have a warrant, on how you achieve the information that you are authorized to get. Absolutely not, Your Honor. What's the limiting principle? Officers have discretion, but it's subject to after-the-fact review for reasonableness. And any time the defendant wants to explore the reasonableness of execution, he or she is welcome to do so. But here that wasn't done. The defense counsel made it a choice to focus on the validity of the warrant rather than the government's manner of execution. I reject your point completely. All right. So you think that there's an after-the-fact reasonableness limitation, that there's no limit at all on what the government can do when it tells the issuing judge, we're going to do A, it actually doesn't need to do A. It can do B, C, D, E, or F. I mean, we certainly shouldn't be misleading the judge if we weren't planning to do A at all. I don't know that you were. If you use a cell-site simulator, you have to get close to the device in the first place. The normal way that's done is by getting information from the phone companies, which tells you where it is. And the information from the phone company often isn't sufficiently precise to actually find, to zero in on the person that's doing all that, the last bit. And so that's the reason that officers often use both a warrant and a cell-site simulator. But I'm looking, for example, at the affidavit. This is sort of an opening brief. Appendix 28, Officer Carms, going through a letter from the Milwaukee Police Department, and so on. 3A, he's talking about subscriber information being useful. Then you get down to 3G. I believe that the records I see from Milwaukee Web sell you the telephone company that sells towers or sites. This is him looking at data stored on the phone. He's scrolling on. And he says that this is necessary, and he's talking about the cell phone company. And I check the internet, and I get that his telephone confirms that it's a cell phone carrier company. The number is listed as Sprint. You know, this is all about Sprint. Dolly is completely clear on the point. The government, the affidavit, needn't specify the manner of execution. Does that mean the government can also lie about it? I don't believe there's any misrepresentations here at all. It is understood in the law of fraud that there can be misleading after-truths, right? I understand my colleagues being worried that somebody reading this application might think that data from Sprint would be the sole means used to execute the law, right? If this were a securities case, one would worry about providing good news but not bad news. And you wouldn't say, well, there can't be fraud because, of course, the good news would be provided to the investors. It wasn't that good. It's just that we didn't provide the rest. Your Honor, I'm not going to defend. More disclosure is a good thing, and the Department of Justice, within the past year, has implemented a policy to make sure it's crystal clear when it uses a cell-site simulator that it discloses that to the court ahead of time. But does the Fourth Amendment matter? It's just not essential to do so. That's actually not my opinion. It may not be to what it was. There may be no problem with obtaining a warrant saying we want a warrant to locate this, to use techniques of our choice to locate this human. Stop. Not describing the techniques. The problem arises when you describe one technique and imply that that's the technique. No, that's exactly my point. And, you know, we can belabor all of the language in both the affidavit and the warrant, but that's how it reads. But if you don't have clear resistance, you can respond to that if you want. I mean, the affidavit does include the saying that there's probable cause to believe that the physical location of the cellular telephone will reveal evidence of the crime. But it's certainly true, there's nothing explicit about the use of a cell-site simulator. All right, thank you very much. Anything further? Mr. Johnathan, do we know how much time we have? Two minutes. Just one brief reply that I'd like to clarify. We took the government at their word. I was counsel below. We took the government at their word when they provided the state court order expressing that they're going to track through SPRINT. I think Your Honor is exactly correct that if you read it in context, it's always referencing tracking through SPRINT, not tracking through any other means. And we also provided discovery related to the tracking through SPRINT. We actually had some spreadsheets with coordinates and other information, dates, times, things like that. And so the only reason we didn't challenge the manner of the search is because we took the government at their word. And now we know Stingray's used. We absolutely would have raised that issue if we would have known about Stingray. And so at a minimum, I do think that it would be appropriate to send this back on remand so that that can be litigated. All right, thank you. No other questions? That's all. Thank you very much. And you took this case by appointment, did you not? Correct. We appreciate your help very much to the client and to the court. And thanks as well. Thank you. We'll take the case under advisement.